# CHARLESTON.

F. R. CHRISTIE, ADM'R, *v.* OSCAR MITCHELL.

Submitted January 30, 1923.    Decided February 20, 1923.

1. MASTER AND SERVANT—*Master Not Liable for Injuries to Servant's Invitee on Truck.*

   A master is not liable for personal injuries sustained by one invited by his servant to ride on his truck without actual or ostensible authority to do so, when not acting within the scope of his duties.  (p. 204).

2. SAME—*Master Liable for Willful Injuries to Servant's Invitee on Truck.*

   But notwithstanding this general rule, if such servant after so inviting one to ride with him, and while operating such truck within the general scope of his authority, does so in a wanton, wilful and reckless manner and thereby injures his invitee, the master is liable for the injuries thus inflicted. (p. 205).

3. SAME—*Master's Duty to Servant's Invitee Stated.*

   The general rule is that a master owes no other duty to one who is a trespasser or a mere licensee or invitee of his servant except not to wantonly and wilfully injure him. (p. 206).

4. SAME—*Evidence of Willful Injury to Servant's Invitee Held Insufficient.*

   In this case the evidence was insufficient to show such wanton and wilful conduct on the part of the servant in driving his truck as to render the master liable for the injuries sustained by plaintiff's intestate. (p. 207).

5. NEW TRIAL—*Verdict May be Set Aside Where Answers to Improper Questions Not Disavowed by Counsel Although Jury Admonished to Disregard them.*

   When counsel engaged in the trial of an action for personal injuries persists in asking questions of witnesses

calling for testimony manifestly irrelevant and improper, and some of which questions are answered by them, the court may, if they are not disavowed by counsel and the effect of such evidence thus expunged, set aside the verdict on that ground, though the jury have been told not to regard such improper questions and answers. (p. 207).

Error to Circuit Court, Mercer County.

Action by F. R. Christie, Administrator, against Oscar Mitchell. Verdict for plaintiff, and from an order setting aside the verdict and granting a new trial, plaintiff brings error.

*Affirmed.*

*Russell S. Ritz,* for plaintiff in error.

*French, Easley & Easley,* for defendant in error.

MILLER, PRESIDENT:

The circuit court set aside the verdict for plaintiff for $8,000.00, and awarded defendant a new trial. The action is for the death of plaintiff's intestate, a boy twelve years of age, by the alleged wrongful act of defendant in running over him with a truck driven by his servant, in the City of Bluefield, in November 1921.

The material facts in the case are substantially as follows: Defendant at the time of the accident owned and operated a number of trucks. One of these was driven by Kelly J. Collins, who was then engaged in hauling cement from the railroad to Bluefield College, then under construction. The capacity of the truck in question was 3000 pounds, and it was loaded with 3500 pounds of cement.

At a point on Adams Street in South Bluefield, a number of children called to the driver and asked him to let them ride. They were in a quarrel with some other children, and the driver stopped and permitted two little girls and four little boys, among them plaintiff's intestate Johnny Neal, to get on the truck. The driver knew these children well and had known them for seven or eight years, and says that to be kind to them he took them on the truck to get them away from the children with whom they were quarreling, and told them to hold on tight and not fall off, and they said

they would. The two little girls got on the step on the left hand side of the truck, one of the boys got on the seat with the driver, and three of the little boys got on the step on the right hand side, according to the evidence of the plaintiff. The plaintiff's · evidence shows that Marvin Neal, a brother of the deceased, was in front on the step, next to him a boy by the name of William Patterson, and Johnny Neal was behind him, all three standing on the step and holding on with their hands.

The street where the children got on and from there on was unpaved, had been cut full of chuck holes and was rough and uneven. The truck had not proceeded far until it came to the intersection of Adams with Dearborn Street, where there was a rise in the street of several inches. Some of plaintiff's witnesses refer to it as a bump in the street, another said that a sewer pipe crossed the street there, making a rise, while another said it was just an uneven place. When the truck struck this place, Johnny Neal, who had loosened his hand to shake his fist at a girl with whom he had been quarreling and who was walking along the north side of Adams Street, fell from the truck, the hind wheel passing over him and injuring him, from which injuries he died.

The children who were on the truck, all of whom testified for the plaintiff, said that the street was rough and full of holes and that they were obliged to hold on with their hands to keep from falling off. Some said that the truck was running about as fast as a street car runs and faster than a boy can run, while others said it was not running as fast as a street car runs. The driver said that he was going five or six miles an hour; that the truck was in second gear, and that it will make six miles in second on a good level street; that he was driving carefully; and that when he approached a chuck hole, he shoved in the clutch and held the brake tight. Defendant gives it as his opinion that if the truck had been running fast over this road, loaded as it was with 3500 pounds of cement and with only 3000 pounds capacity, it would have torn the truck to pieces, and that it would have been impossible to keep the cement on the truck.

Collins, the driver, testified that when he got to Dearborn Street, where the accident happened, he looked back and saw a child's hand-hold slip; that he immediately put on his brake, but felt the wheel strike the child; that he stopped within four or five feet and went back and found that the child was Johnny Neal.     Some of the children who testified for plaintiff said that the truck ran 50 or 75 feet, while others said 75 to 100.     The testimony of defendant was that Collins was a careful and skilful driver with several years experience and had been working for him for some time prior to the accident.     Defendant had a rule which was posted, which forbade any of the truck drivers to permit any one to ride on the trucks, and in addition to this rule had given Collins personal instructions not to let any one ride on his trucks.

The foregoing statement of facts does not cover the testimony of two or three of defendant's witnesses, truck drivers for defendant, including Collins, to the effect that the deceased, Johnny Neal, was not among the children allowed on the truck, but that after the truck started with the children who were allowed to get on it, Johnny Neal ran after it and caught hold of the braces on the side of the bed and was hanging on when Collins looking back saw his hand-hold slip.     The other drivers swear that they were on a truck following the one Collins was driving and saw the boy running after his truck and saw him lose his grip and fall under the wheel.

Nor does this statement of facts cover the action of plaintiff's counsel in attempting to introduce certain evidence respecting insurance against accidents which defendant was carrying, and respecting the physical condition of deceased's father, and the fact that his mother was the sole support of her husband and children, brought out by his questions, some of which the court allowed the witness to answer, regardless of the objection sustained, but which answers the court afterwards struck out and told the jury they should not regard them.

These actions of counsel and the court are made the subject

of points of error relied on to support the judgment complained of and will be dealt with later.

The only basis in pleadings or proof relied on by plaintiff's counsel for recovery was the alleged reckless, wilful and wanton negligence of the driver in operating the truck after deceased had gotten on it, covered by the only instruction proposed and given on his behalf, at the close of the trial, as follows:

> "The court instructs the jury that if you believe from the evidence that the plaintiff's decedent, Johnny Neal, was riding upon defendant's truck by invitation or by the consent of the driver and that after boarding said truck under such circumstances, the defendant's driver was grossly and wantonly reckless in driving said truck over a rough and uneven street at a high rate of speed and that as a result of such wanton and reckless driving of said truck the said Johnny Neal was thrown or caused to fall from said truck to the ground and was run over and killed, then you are told that the law is regardful of human life and personal safety and if one is grossly and wantonly reckless in exposing others to dangers, it holds him to have intended the natural consequences of his act and treats him as guilty of a wilful and intentional wrong, and if you so find, then your verdict shall be for the plaintiff for such sum as is just and right, not to exceed the sum of $10,000.00."

This instruction does not take into consideration the authority or want of authority of the driver, actual or ostensible, to invite or permit children or other persons to ride on his truck. The general rule, according to the great weight of authority, including our own decisions, is that a master is not liable for personal injuries sustained by one invited to ride on a vehicle by his servant in charge of it without actual or ostensible authority to do so, and where not acting within the scope of his duties. *Rolfe* v. *Hewett,* 227 N. Y. 486, 14 A. L. R. 125; *Goldberg* v. *Borden's Condensed Milk Co., Id.* 465; *Morris* v. *Brown,* 111 N. Y. 318; *Driscoll*

v. *Scanlon*, 165 Mass. 348; *Virginia Midland R. R. Co.* v. *Roach*, 83 Va. 375; *Sweden* v. *Atkinson Imp. Co.*, (Ark.) 27 L. R. A. (N. S.) 124; *Dover* v. *Mayes Mfg. Co.*, (N. C.) 46 L. R. A. (N. S.) 199, and notes; *Walker* v. *Fuller*, 223 Mass. 566; *Higbee Company* v. *Jackson*, (Ohio), 14 A. L. R. 131, notes; *Kiernan* v. *New Jersey Ice Co.*, 74 N. J. L. 175; *Scott* v. *Peabody Coal Co.*, 153 Ill. App. 103; *Schulwitz* v. *Delta Lumber Co.*, 126 Mich. 559; *Mahler* v. *Stott*, 129 Mich. 614.

In the North Carolina case it was held not to be within the implied authority of teamsters to invite boys to ride upon their wagons. In the Massachusetts case of *Driscoll* v. *Scanlon, supra*, it was held to be outside the authority of the driver to invite an infant to ride with him. In the Virginia case it was decided that it was not within the implied authority of the engineer to invite one who had been in the employ of the company, but who was not then so employed, to ride on his engine. In *Gruber* v. *Cater Transfer Co.*, 96 Wash. 544, it was held that the presumption is that the driver of a truck not intended for passengers and ordered by plaintiff for the transportation of his goods, has no authority to permit him to ride, and the owner is not liable to him for injuries received while riding on the truck by permission of the driver.

Notwithstanding the general rule laid down and applied in the authorities just cited, it is settled by the weight of judicial decisions that, if after the unauthorized act of the servant and the violation of his duty to his master, and when acting in the general scope of his authority, he becomes guilty of wanton, wilful or reckless negligence in the operation of the machine or vehicle in his charge and injuries result therefrom to his invitee or licensee, the master is liable therefor, such operation being regarded as done within the general scope of his authority. Such a case was presented in *Higbee* v. *Jackson, supra*, the case mainly relied on by plaintiff's counsel. In that case the evidence of wilful and wanton recklessness on the part of the driver of a delivery truck was complete and uncontradicted. But in that case Judge Jones dissented and regarded any exception to the general rule inapplicable to the facts proven. In

*Rolfe* v. *Hewitt,* also cited, it was laid down as a general rule of master and servant, that in the absence of evidence the owner or an automobile can not be held liable for the death of one riding on the car on the theory that he was wantonly and wilfully injured by the chauffeur.

Our own cases also will be found laying down the rule as to injuries wantonly and wilfully inflicted by a servant. In cases like this the rule is that the master owes no other duty to one who is a trespasser or a mere invitee or licensee except not to wantonly and wilfully injure him.    *Bess* v. *C. & O. Ry. Co.,* 35 W. Va. 492; *Ritz* v. *City of Wheeling,* 45 W. Va. 262; *Uthermohlen* v. *Boggs Run Co.,* 50 W. Va. 457; *Dickinson* v. *Coal Co.,* 76 W. Va. 148; *Smith* v. *Sunday Creek Co.,* 74 W. Va. 606; *Spicer* v. *C. & O. Ry. Co.,* 34 W. Va. 514; *Woolwine's Admr.* v. *C. & O. Ry. Co.,* 36 W. Va. 329.    In *Bess* v. *Railway Company* the boy inured was a trespasser on the train.    Judge BRANNON says at page 497, "for though a trespasser, he had not forfeited life or limb, and had the right due to one human being from another, the right of exemption from brutal inhumanity, and not to have his hand while holding to the car kicked loose when the car was moving, to the almost certain loss of life or limb." In the case of *Daugherty* v. *Chicago, Mil. & St. P. R. R. Co.,* (Iowa) 14 L. R. A. (N. S.) 590, as in this case, the original act of negligence was that of the servant in allowing the decedent to ride on the truck, for which the defendant was not liable.    And in that case the court held that there was no evidence that the servant purposely or wantonly and wilfully inflicted the injuries complained of.    That was a hand car case, where the boy by becoming dizzy fell from the car and was injured.    In the North Dakota case of *Grabau* v. *Pudwill,* 178 N. W. 124, a boy fourteen years of age was allowed to ride on the running board of a private car, with the knowledge and implied consent of the owner.    He was injured at a curve in the road. where the machine left the road and collided with a wire fence.    It was held that under the facts and circumstances of that case it was error to instruct a verdict for the defendant;

that the question of the defendant's negligence should have been submitted to the jury. In that case the evidence impliedly showed invitation to ride by the owner, from whom the duty arose to observe ordinary care not to injure the invitee: even a trespasser is entitled to this protection. *Davidson* v. *P. C. C. & St. L. Ry. Co.*, 41 W. Va. 407, and cases cited.

In the case at bar we do not think there was any appreciable evidence tending to show wilful, wanton or reckless disregard of decedent's rights. True, there was some little evidence tending to show that the driver drove fast over the rough road, but this is denied by him; and the size of the load, the character of the machine, and the unevenness of the road over which he had to travel, render the evidence on this question of negligence in driving too slight to justify a verdict against the defendant on the theory of plaintiff's declaration and his instruction to the jury. On this evidence the court would have been justified in giving to the jury defendant's instruction number one, to find for him.

The grounds of defendant's motion to set aside the verdict and grant him a new trial as shown by the record were: (1) that the verdict was contrary to and not supported by the evidence; (2) that the court improperly instructed the jury and refused a proper instruction proposed by defendant; (3) that the court admitted improper evidence offered by plaintiff; (4) that the verdict was excessive and not warranted by the evidence; and (5) that on cross-examination the court had allowed counsel to make inquiry of defendant's witnesses respecting an insurance or bonding company and its relation to the suit, etc. It does not appear from the record upon which of these grounds defendant's motion was sustained, but we have already indicated that it was properly predicated upon the first and second of these grounds. The new trial might have been predicated upon the persistency of plaintiff's counsel in asking questions respecting the suretyship of a bonding company and as to who was defending the action, after the court had ruled against him on the right to go into these questions, whereby and to all intents and pur-

poses he secured the benefits of the evidence; also in attempting to prove by her and her answers to questions that the mother of the deceased was the support of her husband and children, all of which would have had no relevancy to the question of defendant's liability to the estate of the decedent. The impropriety of eliciting such evidence is unquestionable. The only·purpose was to prejudice the jury in favor of plaintiff and against the defendant. The effect thereof could not have been wholly cured by the rulings of the court that the questions were improper, and by telling the court not to regard the answers. *Walters* v. *Appalachian Power Co.*, 75 W. Va., holds such evidence to be prejudicial and reversible error. It was also so held in *Virginian-Carolina Chemical Co.* v. *Knight*, 106 Va. 674. In *Cosselmon* v. *Dunfee*, 172 N. Y. 507, it was held: "The practice in negligence cases of asking a witness a question which counsel must be assumed to know cannot be·answered—in this case, as to whether defendants carried insurance for accident to their employees—is highly reprehensible, and where the trial court or appellate division is satisfied that the verdict of the jury has been influenced thereby it should for that reason set aside the verdict." Counsel for plaintiff had opportunity to correct his error by withdrawing the questions, and his remarks in relation thereto, if any, and disavowing any purpose to prejudice defendant before the jury, but he did not do so. *C. & O. Ry. Co.* v. *Hoffman*, 109 Va. 44; *State* v. *Clifford*, 58 W. Va. 681; *State* v. *Huff*, 80 W. Va. 468.

However, as we are to affirm the judgment on other grounds, we need not now pass definitely on this question nor on the question of the excessiveness of the verdict. Great consideration is due to the judgment of the trial court in awarding a new trial, and the rule referred to in *Walke* v. *Premier Pocahontas Collieries Co.*, 94 W. Va. 38, decided contemporaneously with this case, is applicable, namely, that it takes a stronger case to reverse a judgment awarding a new trial than one refusing it.

· The judgment will therefore be affirmed.

*Affirmed.*