BEULAH ONEY *v.* JAMES A. BINFORD

(No. 8085)

Submitted April 30, 1935. Decided May 7, 1935.

*McGinnis, Ashworth & Mann,* for plaintiff in error.
*Bailey & Shannon* and *Wm. M. Holroyd,* for defendant in error.

HATCHER, JUDGE:

In this action plaintiff recovered a judgment for personal injuries caused by the wreck of an automobile in which she

was a guest. Counsel for defendant secured a writ of error.

The automobile was owned and driven by defendant. The accident occurred about 1:00 A.M. on a winding mountain road, although, leading back from the place of accident, the way (according to the map in the record) was straight for more than 200 feet. The road was hard-surfaced and had a berm four feet wide on the side where the car wrecked. A Mr. Hall and his wife were also guests in defendant's car.

Mr. Hall, testifying for plaintiff, said there was fog "in patches" along the road the night of the accident and fog where it occurred (although no worse there than what they had driven through); that prior to the accident defendant's car had been traveling consistently at a speed of from 20 to 30 miles per hour; that the windshield of the car was badly cracked, and smoky or brown looking, and "pretty hard to look through"; that he noticed the car was "heading over the bank" and called "Jimmie" (defendant's name) but it "was too late, * * * he had started over then"; that the car plunged down a precipitous slope about fifty feet; that he could see about ten feet ahead of the car at the time it left the hard surface; and that he was sitting directly behind defendant, but did not observe what he was doing then and did not know what caused the car to leave the road.

The plaintiff is a graduate nurse and was aged twenty-six years at the time of the wreck. She and defendant had been "sweethearts" for eighteen months, during which period they had taken many automobile rides together in his car at night and in day, including rides along the road where the accident happened. She could operate an automobile herself. This was their first accident. Before it happened, the four people in the car had been conversing with each other "along the way". Her testimonial description of the accident follows: "He (defendant) had been talking and he turned his head over to me and still talking—kind of turned his head * * *. When he kind of turned his head I looked over at him—just glanced at him * * * when he turned his head and was talking the car seemed to get out of the road and Mr. Hall called to him and when Mr. Hall called to him he turned his eyes back on the road—back to the front of the car, and when he did that

he was out of the road too far to get back in. * * * His car didn't just go right down over the bank. * * * It went a short distance kind of on the bank before it started down over." She received severe injuries in the wreck. Her sweetheartship with defendant is seemingly unchanged.

Neither Mrs. Hall nor the defendant testified, and there were no other eyewitnesses. A continuous track in the berm showed that after leaving the hard surface, the car traveled in a straight line, gradually diverging from the hard surface, for about 57 steps (171 feet) before starting down the slope.

Plaintiff remembered signing a paper a short while after the accident but did not recall what the paper contained. She identified her signature and also that of defendant to the following writing:

"Mullens, W. Va.
Sept. 12, 1933.

My name is Beula Oney. Early in the morning of August 25, 1933, I was riding as a guest in the Ford sedan of Mr. J. A. Binford. He was driving and I was riding in the front seat with him. In the rear seat were Mr. and Mrs. Henry Hall. We were returning to Mullens from Beckley where we had gone the previous evening to visit at the home of the brother of Mrs. Hall. When near Helen, in the direction of Mullens, Mr. Binford ran into a pocket of fog which caused him to lose control of the car. The car ran off road and went over a steep bank onto railroad track. Before the accident occurred Mr. Binford was driving carefully, about 15 miles, or perhaps even slower than that. I have ridden often with Mr. Binford and consider him a safe and careful driver. I do not think the accident was due to any fault of Mr. Binford.

I have read the foregoing statement and same is true.

Beula Oney.

Witness:
J. A. Binford."

After reading the above, she did not deny any of its statements. She merely said she did not remember making them, attributing her amnesia to her suffering and the "dope" used to ease it.

It will be noted that there are no inconsistencies between plaintiff's testimonial and written accounts of the accident. Her testimony contains no reference whatever either to the condition of the windshield or to the fog. Pockets of fog (varying in density) along the road that night were observed by all the other witnesses.

Counsel for plaintiff would charge the wreck entirely to the act of defendant in turning his head towards her. Her description, reiterated, that defendant "kind of turned his head," does not indicate that he turned his head entirely from their course. The turn of his head was not sufficient even to attract Hall's attention. Plaintiff's words do not convey the impression that defendant looked at her for more than an instant. Both her written account and her testimony show that she does not regard the look as a factor in the wreck. Her account says *the fog* caused his loss of control. While testifying, she was asked this question: "When you came to the point of the wreck, that is where the car went over the embankment * * * was there anything that happened that indicated to you that this wreck was about to occur?" She answered flatly, "No." His look at her (if gauged by the time Hall called "Jimmie") occurred shortly before the car reached the edge of the embankment. If his conduct had made plaintiff apprehensive at that moment, she could not have answered the above question in the negative. The long straight car track in the berm gradually diverging from the hard surface, could not have been produced wholly by a sudden or momentary act of defendant. On the contrary, such a sustained line of divergence all the way across the berm indicates prolonged inattention to the course the car was taking. Furthermore, if under the circumstances, plaintiff permitted defendant's eyes to linger on her for more than a glance, she acquiesced in his distraction since she herself did nothing to recall his attention to the road.

A windshield of an automobile materially limiting the operator's vision ("pretty hard to look through"—Hall), a pocket of fog, a winding road, a speed of 20 to 30 miles per hour, and a "talking" operator created a situation ripe for disaster. As one experienced with automobile travel, plaintiff

is chargeable with knowledge of the danger of that situation. She should have been alert for her own safety. That she was not so is demonstrated by the fact that she was in the front seat and in better position to see the proximity of the car to the brink than was Hall; yet he saw it and she did not until after his cry of alarm. Her concentration on defendant and her complacency with his conduct made her an acceptor of the danger his conduct created. ''Where possible danger is reasonably manifest to an invited guest, and she sits by without warning or protest to the driver and permits herself to be driven carelessly to her own injury, she becomes a co-adventurer in the risk, and is thereby barred of recovery.'' *Clise* v. *Prunty,* 108 W. Va. 635, 638, 152 S. E. 201. Accord: *Herold* v. *Clendennen,* 111 W. Va. 121, 124, 161 S. E. 21; *Browning* v. *Tolley,* 111 W. Va. 548, 163 S. E. 10; *Adams* v. *Hutchinson,* 113 W. Va. 217, 222, 167 S. E. 135.

The judgment of the circuit court is therefore reversed, the verdict of the jury set aside, and a new trial awarded the defendant.

*Judgment reversed; verdict set aside; new trial awarded.*