CHARLES J. SCHUCK, Judge.
This and two other claims, namely one of Julia W. Scott in her own right, and James C. Scott, her son, are brought against the state road commission in the amounts of $10,000.00, $15,000.00, and $5,000.00 damages respectively. The three claims were heard together, the same evidence or testimony being presented and applied to the said claims respectively, and the decision herein by the court will accordingly apply in all of the said claims.
Plaintiff’s husband, Charles P. Scott, the claimant Julia W. Scott and James C. Scott, her son, were driving in an auto *387 mobile on the 25th day of October, 1943, in the late afternoon of the said day over and on the public road or highway between the town of Deepwater and the city of Oak Hill in Fay-ette county, West Virginia, which said highway is known and designated as West Virginia route 61. The highway is improved, having a width of approximately 16 feet and at and near the place of the accident berms on either side of the said improved highway varying in width from three to four feet and at places nearly as wide as eight or ten feet. While driving along said highway and approaching the bridge which crosses Loop creek at and near the unincorporated town of Robson, the said automobile then and there driven by the claimant, James C. Scott, a young man of twenty-four years of age, and now in the armed forces was driven over the embankment or approach to the end of the said bridge causing the automobile to turn over, the said Charles P. Scott to be then and there killed, and the claimant, Julia W. Scott, and claimant, James C. Scott, to suffer serious bodily injuries which required medical and hospital treatment and for which these actions are brought in this court. The accident took place at about 6:30 on the evening of October 25, 1943, at a time when it was raining or misty, all of which conditions were known by the two living claimants and undoubtedly by the deceased Charles P. Scott. Claimants maintain that by reason of the growth of brush along the road leading to the said bridge and by reason of the height and thickness of the said brush, it was impossible to see the approach to said bridge and that the driver, the said James C. Scott, could not see the approach but thought that the road continued straight ahead without the angle approach, which was noticed too late for him to negotiate the turn onto the bridge causing the automobile to go over the embankment at the end of the bridge and bringing about the accident in question. Witnesses were introduced to sustain claimants’ contention, and in view of the seriousness of the claims and the amounts involved, the court determined to and did in July make a very careful investigation and took a personal view of the road and bridge and the attendant surrounding conditions. We are, therefore, in our judgment, in a position to fully determine the effect and weight to be given *388 to the testimony introduced by both the claimants and the department involved and to apply the results of the said view in determining whether or not claimants are entitled to awards.
One important fact presents itself in determining whether or not the brush, or growth, in question, was sufficient to obscure any view of the bridge, so far as any traveler on the road approaching it, at a reasonable rate of speed, under the existing conditions, was concerned. Immediately in front of the brush in question and on the same side, however, and near to the bridge, there were two mail boxes used as receptacles for the deposit of daily newspapers by the persons who lived in that vicinity. There is no evidence to show that these mail boxes could not have been seen at the time of the accident; on the contrary, it may well be assumed that they could, and that if such was the case there is no question in our minds from the view that we took, considering the season of the year in which the accident happened, namely, in the middle of the fall of 1943, that anyone approaching the bridge and driving at the proper rate of speed could have seen the bridge for at least 250 to 300 feet removed from the approach and in the direction from which the car was traveling at the time. There is testimony that the bridge can be seen at a distance of over 400 feet when traveling from the direction that claimants’ car was moving at the time of the accident.
Claimants introduced as a witness, one W. R. Seal, a state trooper, who testified (record pp. 39-42):
“Q. At the time of the accident about how far would you say a person driving from Oak Hill could first see the 'bridge, coming around the curve before you get to the bridge?
A. Well, he could see it for probably 150 feet. That is only a guess, but he could see it at least 150 feet before he would get to it.”
If all this be true, considering the fact that it was raining and that any driver under the circumstances would be obliged *389 to exercise certain care for his own protection as well as of those riding in the car, then we maintain that the accident could not have happened from the causes alleged in claimants’ petition but that it was caused by the careless and negligent driving of the automobile and that the high rate of speed at which it was being driven, made it impossible to negotiate the curve or approach to the bridge in question, and thus caused the automobile to leave the highway, go over the embankment, and causing the death of one of its occupants and the injuries to the other two.
Another factor that presents itself prominently in the consideration of this case is that at least the driver of the car and the claimant, Mrs. Julia W. Scott, were fairly well acquainted with the road, as well as with the approach to the bridge in question. The claimant James C. Scott testifies that he passed over the road several years before and that he had also passed over it going in an opposite direction on the morning of the accident. His mother, Mrs. Julia W. Scott, in her testimony says (record p. 97) that just a week or so previous to the accident she and her said son had passed over the road going to Oak Hill on one day and returning home the next. Their trips to Oak Hill were occasioned by reason of the fact that a daughter of the claimant Mrs. Scott lived there, (a sister of the claimant, James C. Scott) and that they had passed over the road in making the visits to the said daughter’s home. Under these circumstances and conditions, these claimants had, or ought to have had, a fair knowledge of any dangerous conditions that might exist with reference to passing over the said road in question and were charged with the duty of using such care and caution, and have the car running at such rate of speed at the time, especially so, as it was raining, that the approach to the bridge could be made safely and without any harm to the occupants of the car. We are of the opinion that the car was being operated at a high, improper and dangerous rate of speed. To repeat, the claimant James C. Scott says that he was running at 30 miles per hour, or perhaps a little better; a violation of the speed limit where the accident occurred and consequently such negligence as would ordinarily *390 bar a recovery, Ambrose v. Young, 100 W. Va. 452, 130 S. E. 810, the said Trooper Seal having testified (record p. 40) that the speed limit where the accident occurred is 15 miles per hour. When we take into consideration the further fact of the location of the car with reference to the approach of the bridge, after the happening of the accident, and find that it was from 75 to 100 feet down the creek and away from the bridge and that the claimant, Julia W. Scott, was thrown from the automobile, a distance of about 50 feet from the bridge, then we are driven to the conclusion that, if the automobile had been traveling at the proper and lawful rate of speed, under all the attendant circumstances, it would have been impossible for it to have gone a distance indicated, after going over the embankment.
Under all the circumstances, the negligence of the driver was likewise the negligence of the other occupants of the car, since nowhere is it shown that any protest was made by them, or either of them, to the driver, concerning the operation of the car and its speed at any time previous to the happening of the accident. See Oney v. Binford, 116 W. Va. 242, 180 S. E. 11.
It is contended that there were no warning signs along the road at and near the place of the accident, but we fail to comprehend how the presence of these signs could have in any way prevented the accident. Claimants knew or ought to have known the road, its condition and dangers if any, and the presence or absence of warning signs, could not seemingly, under the circumstances in our opinion, have influenced the driver in the operation of the automobile. It was raining and was beginning to get dark; proper care and caution were required whether signs were present or not.
We are of the opinion, therefore, that the negligence of the occupants of the car was the approximate cause of the accident and that their negligence was such as to bar a recovery and consequently an award is denied.