VIOLET KELLY

*v.*

CHECKER WHITE CAB, INC., a Corporation, *et al.*

(No. 10059)

and

VIOLET KELLY

*v.*

CHECKER WHITE CAB, INC., a Corporation, *et al.*

(No. 10060)

Submitted September 28, 1948. Decided November 30, 1948.

*Salisbury, Hackney & Lopinsky, Samuel D. Lopinsky* and *Jackson D. Altizer,* for plaintiffs in error.

*D. Jackson Savage,* and *W. T. O'Farrell,* for defendant in error.

HAYMOND, JUDGE:

The plaintiff, Violet Kelly, instituted this action of trespass on the case in the Circuit Court of Kanawha County to recover from the defendants Checker White Cab, Inc., a corporation, and its employee, Don Withrow, damages for personal injuries sustained by her when a taxicab owned by the company, driven by Withrow and in which she was riding as his guest, skidded and ran off a public highway in that county in the early morning of January 1, 1946. At the time of the wreck the taxicab was returning from Spencer to Charleston.

The declaration contains three counts. The first and second counts charge the defendants with negligence, and the third count charges them with willful and wanton misconduct, as the cause of the injuries of which the plaintiff complains. The defendants entered their plea of the general issue, to which the plaintiff replied generally, and issue was joined. The trial, at which a special judge presided, resulted in a general verdict for the plaintiff against both defendants for $3,000.00. At the conclusion of the evidence offered in behalf of the plaintiff, the defendants entered their motion for a directed verdict in their favor which was overruled. They made a similar motion at the conclusion of all the evidence which was also overruled. After the verdict was returned they moved the court to set aside the verdict and grant a new trial which the court refused to do. To the final judgment, entered upon the verdict, separate writs of error, which have been argued and submitted together, were awarded by this Court on the individual petitions of the defendants.

On December 31, 1945, and for some time previously, the plaintiff, a widow aged thirty four years, was em-

ployed at a restaurant located on Lee Street in Charleston and maintained living quarters in an upper story of the same building. Shortly before the hour to close the restaurant that night, the defendant Withrow, who had been employed since the year 1942 by Checker White Cab as a driver of its taxicabs, stopped at the restaurant where another woman, aged twenty three years and a friend of the plaintiff, was present when he arrived. She had been staying with the plaintiff and had planned to spend that night at her apartment. There is some conflict in the evidence as to what occurred when Withrow came to the restaurant. He says that the younger woman, with whom he had been keeping company, asked him if he would take her and the plaintiff with him on a trip which he told her he was about to make from Charleston to Spencer and return in a taxicab which he was driving to transport a soldier as a passenger to that place. Her version is that Withrow told her that he wanted her company on the trip, that he insisted that she go with him, that she consented to go if he would permit the plaintiff to accompany them, and that he agreed to that arrangement. The plaintiff says that she did not want to go and at first refused because she intended to visit the home of her sister who lived several miles from Charleston and planned to go there by bus sometime after midnight and after she had closed the restaurant but that she finally yielded at the insistence of her friend and Withrow. Whatever induced the plaintiff and her companion to make the trip with Withrow free of charge as his guests is of no importance for it is admitted by both of them that they voluntarily decided to accompany him.

When he came in the taxicab to the restaurant Withrow had a passenger for Spencer who was riding in the front seat. After the plaintiff and her friend had agreed to go they entered the taxicab and occupied the rear seat. About midnight, with these occupants of the taxicab, Withrow started from the restaurant for Spencer which is located about fifty miles from Charleston. As the trip was undertaken for the purpose of transporting to Spencer a passenger for hire, Withrow was acting within the

scope of his employment in operating the taxicab from Charleston to Spencer and in returning from Spencer to the place of the accident.

The night was cold and traffic conditions were hazardous. The presence of snow and ice on the streets of Charleston and on the road from Charleston to Spencer made the surface of the highway slippery during most of the distance between those localities. The plaintiff knew that the weather was unfavorable and that the roads were in bad condition for travel. Her knowledge of the existence of these conditions was one of the reasons which she said she had for telling her friend and Withrow that she did not want to go with them. It is evident that she and her companion also knew that persons who were not paying passengers were not permitted by its owner to ride in the taxicab. They seek, however, to justify their action in making the trip without payment of any fare by them or by Withrow for them by his invitation to take them with him free of charge. A rule of the defendant, Checker White Cab, forbade its drivers to permit anyone to ride in any of its taxicabs who did not pay the required fare. Withrow knew the rule and he had been instructed that he would be discharged if he violated it.

When the taxicab arrived at Spencer, Withrow stopped it for a sufficient length of time to enable him to discharge his passenger and collect the fare. Withrow did not leave the taxicab at the time but the plaintiff and her companion got out to change to the front seat from the rear seat where they had been riding. When they again entered the taxicab at Spencer the plaintiff occupied the right side of the front seat and her friend sat between her and the driver. They then started on the return trip.

On the way back about twenty miles from Charleston they stopped for food at a restaurant in Clendenin. All of them got out of the taxicab at that place. The restaurant was closed and, after remaining at Clendenin for about five minutes, they again started for Charleston. About two miles from Clendenin, and at a point approxi-

mately eighteen miles from Charleston, to avoid striking a truck approaching from the opposite direction, Withrow, while driving near the center of the road, suddenly turned to the right and, immediately after passing the truck, lost control of the taxicab. It skidded, left the road, ran over an embankment to the left, and turned on its right side at the bottom of the slope. The occupants, including the plaintiff whose back was injured, crawled from the taxicab through an opening in the broken windshield and went at once to the home of a man who lived nearby where the plaintiff was cared for by his wife.

Shortly after the wreck Withrow, who requested the two women and the man and his wife not to tell his employer of the presence of the women in the taxicab, went to a telephone and reported the accident to the Charleston office of the company.

The wreck occurred about three thirty o'clock in the morning of January 1, 1946. About six o'clock, in response to the telephone call, employees of the company came to the scene. They and Withrow placed the taxicab in an upright position and he drove it back to Charleston. It does not appear that the taxicab sustained any damage other than the broken windshield. Later he returned to the dwelling where the women had remained and brought them to Charleston, and they arrived in front of the restaurant on Lee Street about nine thirty o'clock that morning. A short time afterwards the plaintiff went to a hospital in Charleston where she consulted a doctor and was treated for her injury. She remained at the hospital for a period of seven days. For a period of about three months she was required to wear a cast which extended from her shoulders to her hips and she was unable to return to her work until sometime in September, 1946, about nine months after the accident. At the trial in March, 1947, she still suffered from pain in her back.

The plaintiff and her companion testified that, on the trip from Charleston to Spencer, Withrow drove the taxicab at a speed of thirty five to forty miles per hour, that the taxicab skidded three or four times, and that each

time the plaintiff protested the speed at which he was driving she told him that if he did not reduce the speed she would get out. They also testified that on the return trip, between Spencer and Clendenin, a distance of about thirty miles, he drove at a speed of from fifty to sixty five miles per hour, that the taxicab slipped and skidded on the slippery road, and that they told him eight or nine times in that distance that he was driving too fast, that they were "scared to death", and that unless he slowed down they would get out. Their version was that after each protest he would reduce the speed until he thought they had forgotten but that in a short time he would again resume his excessive speed. They said that despite their protests he was driving on an icy stretch of road at the rate of sixty to sixty five miles per hour when they saw the truck approaching in front of them and that at that time both vehicles were traveling in the center of the highway.

Withrow denied the statements of the plaintiff and her friend about the speed of the taxicab. He admitted that the road was slippery in places, that driving conditions were difficult, and that the taxicab slipped and skidded several times on the way to Spencer and on the return trip. He said that he did not drive at any time on the entire journey at a speed in excess of thirty five miles per hour and that his average speed was about twenty five miles per hour. He denied that the plaintiff or her companion at any time protested because of the speed at which he was driving, asked him to drive more slowly, told him they were frightened, or threatened to leave the taxicab. He also stated that he stopped the taxicab for a short time before they came to Clendenin and that he and the women got out at that place.

The only evidence relating to the speed of the taxicab and the conduct of its occupants during the trip until after the accident is the testimony of the plaintiff, her friend, and the defendant Withrow. The evidence is conflicting with respect to those matters. By its verdict the jury has resolved the conflict in favor of the plaintiff

and its finding as to the facts in dispute must be accepted as correct.

In support of the judgment of the trial court the plaintiff asserts that the conduct of the defendant Withrow, in driving the taxicab, constituted willful and wanton conduct which fixes liability for her injury upon both defendants; and that neither contributory negligence nor assumption of risk is a defense which bars her recovery. In opposition to this contention the defendants insist that the conduct of the driver as the employee and the servant of the owner of the taxicab at most amounted to negligence; that the plaintiff, in riding in the taxicab without the payment of the required fare at the invitation of the driver and in violation of the rules of the owner, was a trespasser; that there is no liability of the defendant, Checker White Cab, as owner, for the injury of the plaintiff caused by the negligence of the driver; and that contributory negligence of the plaintiff and her assumption of risk bar her right to recover damages from the defendant Withrow.

The controlling question in this case is whether the manner in which Withrow drove the taxicab constituted negligence or willful and wanton conduct as the cause of the injury to the plaintiff.

It is often difficult, in a particular situation, to distinguish between acts of negligence and acts which constitute willful and wanton conduct. The law, however, recognizes a clear and valid distinction between them. The difference is indicated by this Court in the case of *Stone* v. *Rudolph,* 127 W. Va. 335, 32 S. E. 2d 742. The opinion cites with approval the Virginia case of *Thomas* v. *Snow,* 162 Va. 654, 174 S. E. 837, and in quoting from the *Thomas* case uses this language: "Negligence conveys the idea of heedlessness, inattention, inadvertence; willfulness and wantonness convey the idea of purpose or design, actual or constructive. In some jurisdictions they are used to signify a higher degree of neglect than gross negligence. 'In order that one may be held guilty of willful or wanton conduct, it must be shown that he was

conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result.' 29 Cyc. 510." The Virginia Court, in *Friedman* v. *Jones,* 166 Va. 65, 184 S. E. 186, has also said that, "Willful or wanton conduct imports knowledge and consciousness that injury will result from the act done."

The conduct of the defendant Withrow, in driving the taxicab from Charleston to the place at which it skidded from the highway, and especially from Spencer to that point, constituted clear and almost continuous negligence, but it was not willful and wanton. Though the taxicab slipped and skidded frequently during the trip while driving at a dangerous speed, Withrow was able in each instance, for a distance of eighty two miles and until its sudden and apparently unexpected meeting with the truck, to control its course and to keep it on the highway. It is evident that because of his experience in successfully traveling the road and in surmounting the difficulties created by its slippery condition for more than four fifths of the distance of the trip he had undertaken, he did not expect or believe that he would meet with any mishap before he reached his ultimate destination. His conduct in the operation of the taxicab after it left Spencer may have been dangerous and inexcusable, but it is manifest that he entertained no knowledge or consciousness that injury would result to him or to those riding with him if he continued to drive as he had been driving before the wreck occurred. For that reason his operation of the taxicab did not constitute willful and wanton conduct.

In this jurisdiction the rule is firmly established that the master owes no duty to a trespasser, or mere licensee, or invitee of his servant other than the duty not to injure him willfully and wantonly. *Christie* v. *Mitchell,* 93 W. Va. 200, 116 S. E. 715; *Shrimplin* v. *Simmons Auto Company, Inc.,* 122 W. Va. 248, 9 S. E. 2d 49; *Stone* v. *Rudolph,*

127 W. Va. 335, 32 S. E. 2d 742. The plaintiff, with knowledge that she would not be required to pay a fare for riding on the trip and that the owner of the taxicab would not receive any payment for that service, entered and remained in it as the invitee of the driver. She also knew that no one other than a paying passenger was permitted by the owner to ride in the taxicab and that she did not have permission of the owner to go on the trip with Withrow. Whether her legal status was that of trespasser as distinguished from that of mere licensee or invitee of an employee and servant is, in this instance, of no consequence. As her injury was caused by the negligence of Withrow and not by any willful and wanton conduct on his part, she can not recover from his employer, the defendant Checker White Cab. *Stone* v. *Rudolph,* 127 W. Va. 335, 32 S. E. 2d 742; *Morris* v. *Dame's Ex'r.,* 161 Va. 545, 171 S. E. 662.

It is settled law in this State that the operator of an automobile owes to his guest the duty of exercising reasonable care for his safety. *Stone* v. *Rudolph,* 127 W. Va. 335, 32 S. E. 2d 742; *Broyles* v. *Hagerman,* 116 W. Va. 267, 180 S. E. 99; *Oney* v. *Binford,* 116 W. Va. 242, 180 S. E. 11; *Herold* v. *Clendennen,* 111 W. Va. 121, 161 S. E. 21; *Lewellyn* v. *Shott,* 109 W. Va. 379, 155 S. E. 115; *Clise* v. *Prunty,* 108 W. Va. 635, 152 S. E. 201; *Collar* v. *McMullin,* 107 W. Va. 440, 148 S. E. 496; *Marple* v. *Haddad,* 103 W. Va. 508, 138 S. E. 113, 61 A. L. R. 1248; *Moorefield* v. *Lewis,* 96 W. Va. 112, 123 S. E. 564. The rule applies whether the guest is an invitee or a licensee. *Marple* v. *Haddad,* 103 W. Va. 508, 138 S. E. 113, 61 A. L. R. 1248. Another well recognized principle is that the guest of the driver of an automobile must exercise reasonable care for his own safety and his failure to do so bars his right to recover damages from the operator in case of injury. *Broyles* v. *Hagerman,* 116 W. Va. 267, 180 S. E. 99; *Oney* v. *Binford,* 116 W. Va. 242, 180 S. E. 11; *Adams* v. *Hutchinson,* 113 W. Va. 217, 167 S. E. 135; *Clise* v. *Prunty,* 112 W. Va. 181, 163 S. E. 864; *Herold* v. *Clendennen,* 111 W. Va. 121, 161 S. E. 21; *Lewellyn* v. *Shott,* 109 W. Va. 379, 155 S. E. 115; *Clise* v. *Prunty,* 108 W. Va. 635, 152 S. E. 201.

The testimony of the plaintiff is that she observed the careless and dangerous manner in which the driver of the taxicab operated it between Charleston and Spencer and between Spencer and the scene of the wreck and that she protested vigorously against the speed at which he was driving three or four times before they arrived at Spencer and eight or nine times between Spencer and Clendenin. At both of those places he stopped a sufficient length of time to enable her to leave the taxicab if she had wanted to do so. She told him that she was "scared to death" and threatened to get out unless he reduced the speed. She knew that he gave no effective heed to any of her protests, that they were uttered in vain, that he had resumed the excessive speed after only temporarily reducing it following each protest, and that he would and did continue to travel at a speed which caused her to believe that her safety was endangered. She had realized her danger when she actually got out of the taxicab at Spencer and at Clendenin and she must have known that the threat to her safety would continue, as it did, if she did not finally leave it at either place. Yet, despite the fear which she expressed for her own safety, she again voluntarily entered the taxicab at Spencer and at Clendenin and continued to ride in it until the accident which she feared, and in which she was injured, actually occurred. The inconvenience or the hardship of retiring from the taxicab at an unseasonable hour of the morning and of remaining in Spencer or in Clendenin was ignored or declined by her at the fully apprehended risk of her own personal safety. Her decision to reject the one and to accept the other was not a legal excuse for her willingness to continue to ride toward her destination in Charleston. Her failure to quit the taxicab and remain out of it at Spencer or at Clendenin, which she had the fair and reasonable opportunity to do, defeats her right of recovery against the driver of the taxicab and relieves him of liability for her injury.

In *Young* v. *Wheby*, 126 W. Va. 741, 30 S. E. 2d 6, 154 A. L. R. 919, this Court held, in Point 1 of the syllabus, that: "A guest passenger in an automobile who, with

other passengers, has vigorously protested against the reckless and dangerous driving of the host, cannot maintain an action for injuries received from the driver's continued reckless conduct, occurring after a fair and reasonable opportunity to alight from the car has been presented to the passenger." In that case the plaintiff, a married woman, was riding with other persons as a guest in an automobile which was owned and operated by the defendant who had drunk intoxicating liquor a short time before the accident in which she was injured. With knowledge of the driver's condition, after protesting in vain against the speed at which he was driving and after an opportunity had been afforded her to alight from the automobile, she continued to ride in it until she was injured in a wreck which was caused by the reckless acts of the driver. This Court held that, whether her conduct in remaining in the automobile be characterized as contributory negligence or assumption of risk, the plaintiff was barred from recovery of damages for her injury. Though the particular material facts in that case are, of course, different from those in the case at bar, nothing here appears which differentiates, in substance or in legal effect, the conduct of the plaintiff from that of the plaintiff in the *Young* case. The holding in that case is controlling here and, as applied to the facts of this case, precludes any recovery of the plaintiff from the defendant Withrow.

The judgment is reversed, the verdict is set aside, and a new trial is awarded the defendants.

*Judgment reversed; verdict set aside; new trial awarded.*