IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

June 6, 2025

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**RHODA M. MARCHANT,**
**TIMOTHY E. MARCHANT,**
**AND TIMOTHY S. MARCHANT,**
**Plaintiffs Below, Petitioners**

**v.) No. 24-ICA-364**        (Cir. Ct. of Preston Cnty. Case No. CC-39-2020-C-13)

**PRESTON COUNTY OFFICE**
**OF EMERGENCY MANAGEMENT/E911**
**AND PRESTON COUNTY COMMISSION,**
**Defendants Below, Respondents**


**MEMORANDUM DECISION**

Petitioners Rhoda M. Marchant, Timothy E. Marchant, and Timothy S. Marchant appeal the August 14, 2024, order of the Circuit Court of Preston County that granted Respondents Preston County Office of Emergency Management/E911 ("E911") and the Preston County Commission's motion to dismiss. E911 and the Preston County Commission filed a joint response.[1] The Marchants filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises from a telephone call to Preston County's 911 emergency line on or about February 7, 2018. The Marchants resided in Independence, West Virginia, in Preston County. Bad weather that day led to a power outage at their home. Timothy S. Marchant, the minor child of Rhoda and Timothy E. Marchant, who was home alone at the time, started a generator outside the door to the home's mudroom and ran a power cord from the generator inside the house to an outlet near the electrical box to provide temporary power to the home. The proximity of the generator to the mudroom allowed carbon monoxide produced by the generator's combustion engine to enter the house. While this

---

[1] The Marchants are represented by John R. Angotti, Esq., and Chad C. Groome, Esq. E911 and the Preston County Commission are represented by Jeffrey S. Zurbuch, Esq., Greyson C. Teets, Esq., and S.L. Mallow, Jr., Esq.

was happening, Rhoda and Timothy E. Marchant came home. Perceiving fumes in the house, Timothy E. Marchant opened the windows and doors in hopes that circulating fresh air would remove them. However, by that time, the Marchants were all allegedly and unknowingly suffering the effects of carbon monoxide poisoning. Eventually, the power was restored, and the generator was turned off. At some point, the family began to question whether they were exposed to carbon monoxide, so Timothy E. Marchant called 911 for assistance. He claims that when he made the call, he was confused because of the carbon monoxide in his system.

Mr. Marchant alleges that the 911 operators he spoke with displayed "a distinct lack of knowledge" concerning the dangers and symptoms of carbon monoxide toxicity and no "sense of urgency" regarding his complaints, but did dispatch a fire department to test the carbon monoxide levels in the family's home. Sometime later, before the fire department arrived, Timothy E. Marchant made another call to 911 and informed them that Rhoda and Timothy S. Marchant wanted to go to the hospital. During that call, he claims the 911 operator told him that the decision to seek medical treatment was at the Marchants' discretion, the fire department was on the way to their house, and that if they wanted an ambulance to be dispatched, he could call back and request one. Mr. Marchant alleges that the operator again displayed "a distinct lack of knowledge . . . and/or sense of urgency" during the second call. He told the operator that the family would wait at home for the fire department. After the firefighters arrived, Timothy E. Marchant drove himself and his family from Independence to Morgantown's Ruby Memorial Hospital in what he says was an "intoxicated" state because of his carbon monoxide poisoning. He claims he has no memory of the drive. The Marchants allege that the 911 operators caused them to experience a severe delay in receiving medical treatment for their carbon monoxide poisoning and lulled them into a false sense of safety regarding their medical condition by acting as if there was no need to respond with urgency. The Marchants allege that all members of the family suffered physical and mental injuries as a result of the delay in treatment, but that Rhoda suffered most severely, as she was rendered permanently legally blind and disabled and is unable to work.

The Marchants filed suit on February 6, 2020, against E911 and the Preston County Commission, asserting causes of action for negligence and willful or wanton misconduct pursuant to West Virginia Code § 24-6-8 (1997). The complaint alleged that the respondents knew or should have known of the Marchants' confusion, the high likelihood that they were suffering from carbon monoxide intoxication, and/or the Marchants' lack of knowledge and/or understanding of the nature of carbon monoxide and its toxicity. The complaint further alleged that during the calls, the respondents did not advise the Marchants about the dangers of carbon monoxide, the symptoms of carbon monoxide poisoning, and the need for the Marchants to be provided pure oxygen. It alleges that instead, the respondents displayed and expressed a distinct lack of knowledge on the subject, no sense of urgency, and did not direct the Marchants to seek immediate medical treatment or to request an ambulance. The respondents also allegedly did not dispatch an

2

ambulance but left the Marchants to decide for themselves whether to go to the hospital and then drive themselves there, even though Timothy E. Marchant claims he expressed uncertainty about whether he should drive in his condition. Under both the negligence and willful or wanton misconduct claims, the Marchants asserted that respondents failed to dispatch an ambulance, EMT, or other medical care to them; failed to advise them to get immediate medical attention for carbon monoxide poisoning; failed to appreciate the gravity of the harm posed to them by carbon monoxide poisoning; failed to advise them of carbon monoxide poisoning dangers; failed to train and/or adequately train staff; failed to adequately supervise staff; negligently hired the employee(s) involved; failed to obtain and/or require necessary and proper certifications and/or training for emergency calls; and/or failed to use due care generally. The complaint alleged that as a direct and proximate result of their negligence, willful misconduct, and/or wanton misconduct, the respondents caused a significant delay in care, the lack of proper medical care, and/or caused the Marchants to lose the chance of recovery and/or further permanent injury.

On February 6, 2020, the Marchants served written discovery on respondents. On March 12, 2020, respondents filed a motion to dismiss the complaint based on statutory immunity under West Virginia Code § 24-6-8. Respondents objected to providing discovery responses until the circuit court ruled on their motion to dismiss. Petitioners responded to the motion to dismiss on May 18, 2020, and the court heard arguments on December 23, 2020, and ordered the parties to submit proposed findings of fact and conclusions of law. The parties submitted the same in January 2021. However, the court did not enter an order on the motion, and the case sat dormant. In approximately February 2023, the court issued a notice of involuntary dismissal under Rule 41 for inactivity. The Marchants filed a response indicating that the parties were awaiting a ruling on the pending motion to dismiss and that respondents objected to discovery until after a ruling was made. The circuit court placed the matter back on its active docket but did not enter an order. The Marchants requested a status conference, which was held on July 29, 2024. Thereafter, by order entered on August 14, 2024, the circuit court granted the motion to dismiss, asserting that respondents were entitled to immunity under West Virginia Code § 24-6-8, which states:

> Limitation of Liability
> A public agency or a telephone company participating in an emergency telephone system or a county which has established an enhanced emergency telephone system, and any officer, agent or employee of the public agency, telephone company or county is not liable for damages in a civil action for injuries, death or loss to persons or property arising from any act or omission, *except willful or wanton misconduct*, in connection with developing, adopting or approving any final plan or any agreement made pursuant to this article, or otherwise bringing into operation or participating in the operation of an emergency telephone system or an enhanced emergency telephone system pursuant to this article.

(emphasis added). In its order, the circuit court found that the facts alleged in the complaint did not rise to the level of willful or wanton misconduct because the facts did not demonstrate that the respondents possessed the requisite knowledge and appreciation that their action or inaction may cause harm to another. As the circuit court's order states,

> It is not enough for the [respondents] to know that the [Marchants'] situation was dangerous; rather, they must have known that their actions or omissions created or led to harm to the [Marchants]. In the instant case, there are no facts that allege that [respondents] knew that by allowing [the Marchants] to decide whether they want[ed] to go to the hospital rather than sending an ambulance or advising them to seek immediate medical treatment would cause further harm to [the Marchants]. Some facts actually suggest the opposite. The Complaint states that [respondents] "expressed a distinct lack of knowledge of the foregoing and/or sense of urgency" where the "foregoing" referred to the dangers, symptoms, and [effects] of carbon monoxide poisoning. Thus, without having knowledge of the dangers, symptoms, and [effects] of carbon monoxide poisoning, the [respondents] could not have known that their actions or omissions would result in harm.

The court concluded that the remainder of the Marchants' claims of willful or wanton misconduct "are either strictly negligence claims or suggest that all 911 operators should be required to possess medical training, neither of which can stand alone as willful and wanton allegations." The circuit court also dismissed the Marchants' claims of negligence brought pursuant to West Virginia Code § 29-12A-4 (1986), finding that the immunity provision of West Virginia Code § 24-6-8 bars all claims of negligence in this matter. The court further found, pursuant to *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996), that it would be improper to permit the Marchants to conduct discovery because immunity provisions apply to the respondents, and that the individual circumstances of the case indicated that the Marchants pleaded their best case, so there was no need to order more detailed pleadings. It is from this order that the Marchants now appeal.

Our standard of review is as follows: "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl., *John W. Lodge Dist. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 245 S.E.2d 157 (1978) (citations omitted). Moreover, we are mindful that, "[o]n appeal of a dismissal based on granting a motion pursuant to West Virginia Rules of Civil Procedure 12(b)(6), the allegations of the complaint must be taken as true." Syl. Pt. 3, *Doe v. Logan Cnty. Bd. of Educ.*, 242 W. Va. 45, 829 S.E.2d 45 (2019) (quoting Syl. Pt. 1, *Wiggins v. Eastern Assoc. Coal Corp.*, 178 W. Va. 63, 357 S.E.2d 745

(1987)). Furthermore, "[a] trial court considering a motion to dismiss under Rule 12(b)(6) must liberally construe the complaint so as to do substantial justice." *Cantley v. Lincoln Cnty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007).

On appeal, the Marchants raise two assignments of error. First, they assert that the circuit court erred by granting the motion to dismiss on the basis of immunity because their complaint stated a valid claim for willful or wanton misconduct as required under West Virginia Code § 24-6-8. The Marchants claim that their complaint alleged multiple instances during which the respondents' interactions with them rose to the level of willful or wanton conduct and contend that those allegations are more than sufficient to survive a Rule 12(b)(6) challenge. They further declare that the court failed to properly construe the factual allegations in the complaint in their favor, as required during a Rule 12(b)(6) inquiry, instead selecting the facts "it liked best" in order to defeat their claims. Relatedly, the Marchants contend that the court should not have applied the immunity provisions of West Virginia Code § 24-6-8 to the facts of this case without further inquiry into the respondents' compliance with other E911 call center operational requirements contained in the related subparts of the organizing statute, which involves the creation, oversight, and maintenance of emergency dispatch centers across the state. Despite this lack of context, the Marchants claim that the circuit court erroneously found that the complaint failed to state a claim for which relief could be granted because of the immunity allegedly conferred on the respondents by West Virginia Code § 24-6-8.

For their second assignment of error, the Marchants argue that instead of dismissing their case, the court should have permitted them the opportunity to amend their complaint to cure any perceived defect, arguing that the Supreme Court of Appeals of West Virginia ("SCAWV") has held that dismissal based on governmental immunity is generally improper without allowing the claimant to amend or provide a more definite statement regarding the claim. *See Hutchison*, 198 W. Va. at 150, 479 S.E.2d at 660.

Turning first to whether or not the Marchants adequately pled willful or wanton misconduct in their complaint, upon review, we find that the complaint describes identical conduct by the respondents in the claim for willful or wanton misconduct as it does in the negligence claim, which was pled in the alternative and/or in addition. Negligence and willful or wanton misconduct are legally distinct claims in West Virginia. As the SCAWV has observed,

> It is often difficult, in a particular situation, to distinguish between acts of negligence and acts which constitute willful and wanton conduct. The law, however, recognizes a clear and valid distinction between them. . . . Negligence conveys the idea of heedlessness, inattention, inadvertence; willfulness and wantonness convey the idea of purpose or design, actual or constructive. . . . In order that one may be held guilty of wilful or wanton conduct, it must be shown that he was conscious of his conduct, and

> conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result.

*Kelly v. Checker White Cab*, 131 W. Va. 816, 822-23, 50 S.E.2d 888, 892 (1948) (citations and quotations omitted). Here, the Marchants make no distinction between the facts alleged in their complaint in support of their negligence claim and those that support their alternative/additional claim for willful or wanton misconduct. Because the complaint reiterates identical conclusory language in support of both causes of action, the complaint even alleges that explicitly *negligent* conduct (negligent hiring) constitutes willful or wanton misconduct by respondents. Notably, the complaint contains no allegations that show any requisite consciousness, awareness, or knowledge of the consequences of the conduct and the intention to act or cause injury that would constitute an act of willful or wanton conduct. To the contrary, the complaint contains allegations that the 911 representatives "displayed and expressed a *distinct lack of knowledge* . . . and/or sense of urgency" about the dangers of carbon monoxide, and that respondents' "*failure to appreciate the gravity of harm* posed to the [Marchants] by carbon monoxide poisoning or toxicity" constituted both negligence and willful or wanton misconduct. (emphasis added). Therefore, taking those allegations in the complaint as true, the respondents did not know about the dangers of carbon monoxide poisoning and therefore could not have known that their actions or inactions would result in harm to the Marchants. Accordingly, we find that the complaint does not state a valid claim for willful or wanton misconduct against the respondents.

Furthermore, we are not persuaded that discovery should be permitted to determine whether the respondents complied with the other provisions of West Virginia Code §§ 24-6-1 to 24-6-15 before deciding whether the immunity provision of § 24-6-8 applies. First, nothing in the plain language of West Virginia Code § 24-6-8 suggests that the limitation of liability is contingent on compliance with any other provision of Article 6. Moreover, whether immunity bars a civil action is a question of law for the court to determine. *Heckman v. Jividen*, 249 W. Va. 734, 740, 901 S.E.2d 297, 303 (Ct. App. 2024).

> Immunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all. The very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case.

*Hutchison*, 198 W. Va. at 148, 479 S.E.2d at 658. The SCAWV has stated that it "agree[s] with the United States Supreme Court to the extent it has encouraged, if not mandated, that claims of immunities, where ripe for disposition, should be summarily decided before trial." *Id.*, 198 W. Va. at 147, 479 S.E.2d at 657. Accordingly, we find no merit in the

Marchants' argument regarding the need for discovery on the scope and application of immunity under West Virginia Code § 24-6-8 prior to dismissal on immunity grounds.

Turning to the second assignment of error, the Marchants argue that per *Hutchison*, they should be permitted to amend their complaint to more adequately plead facts to address willful and wanton misconduct and overcome the immunity defense. In *Hutchison*, the SCAWV held,

> We believe that in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff. . . . To be sure, we recognize the label "heightened pleading" for special pleading purposes for constitutional or statutory torts involving improper motive has always been a misnomer. A plaintiff is not required to anticipate the defense of immunity in his complaint, . . . We believe, in cases of qualified or statutory immunity, court ordered replies and motions for a more definite statement under Rule 12(e) can speed the judicial process. Therefore, the trial court should first demand that a plaintiff file "a short and plain statement of his complaint, a complaint that rests on more than conclusion alone." Next, the court may, on its own discretion, insist that the plaintiff file a reply tailored to an answer pleading the defense of statutory or qualified immunity. The court's discretion not to order such a reply ought to be narrow; where the defendant demonstrates that greater detail might assist an early resolution of the dispute, the order to reply should be made. Of course, if the individual circumstances of the case indicate that the plaintiff has pleaded his or her best case, there is no need to order more detailed pleadings. If the information contained in the pleadings is sufficient to justify the case proceeding further, the early motion to dismiss should be denied.

198 W. Va. 139, 149-50, 479 S.E.2d 649, 659-60 (1996) (citations omitted). Clearly, the trial court has discretion in determining whether to require or allow additional pleadings. As expressly stated by the *Hutchison* Court, if the circumstances indicate that the plaintiff has already pleaded their best case, then there is no need to order additional pleadings. Here, the circuit court found that although the Marchants were not required to anticipate the respondents' immunity defense, their complaint contained allegations that the Marchants argued were adequate to assert a claim for willful or wanton misconduct. The Marchants defended their pleading in response to the respondents' motion to dismiss in the lower court in both briefing and oral argument. Furthermore, the record reflects that they never sought leave of the circuit court to amend their complaint to better articulate willful or wanton misconduct, yet now claim it was error for the court not to proactively offer them the opportunity. Notably, the Marchants have not expressed what amendments could be made or facts could be alleged to demonstrate a valid claim for willful or wanton misconduct in light of the facts asserted in the operative complaint. Considering all of the

7

foregoing, we find no merit in this assignment of error and no basis to disturb the order on appeal.

Accordingly, we affirm the August 14, 2024, order.

Affirmed.

**ISSUED:** June 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White