# CHARLESTON.

DELLA LEWELLYN *v.* EDWARD D. SHOTT *et al.*

(No. 6677)

Submitted September 16, 1930. Decided September 23, 1930.

*Sanders, Crockett, Fox & Sanders,* for plaintiff in error.
*Kee & Lubliner, Harold F. Porterfield* and *Russell S. Ritz,* for defendant.

MAXWELL, JUDGE:

Over objection of the defendants a verdict for one dollar in

favor of the plaintiff was set aside on her motion. The defendants prosecute this writ of error.

Plaintiff suffered personal injuries while a guest of the defendant, Mrs. Edward D. Shott, in an automobile driven by her, owned by her husband, Edward D. Shott, the other defendant. Plaintiff's injury was due to an accident on the public road caused by the steering gear of the Shott automobile being out of repair. The two women were jointly engaged in selling a cleaning preparation, and had made frequent trips together in Mercer and McDowell counties, in the same automobile in which the accident occurred.

The theory of plaintiff's case is that both of the defendants knew that the steering gear of the automobile was out of repair and that it was negligence on their part to permit the car to be used while in that condition, and, more particularly, if Mrs. Shott saw fit to use the car in that condition it was her duty to warn Mrs. Lewellyn of the danger. There is no evidence that Mrs. Shott was driving with excessive speed or otherwise carelessly immediately prior to the automobile's leaving the road and going over an embankment.

On the day preceding the accident, Mrs. Shott had noticed a looseness in the steering gear, and as a consequence on that evening the car was taken by Mr. Shott to a garage for inspection. Mrs. Shott says the garage man examined the steering apparatus and requested that the car be brought back the next day, but said that he didn't think it was dangerous. It does not appear how she received this information, that is, whether she was with her husband at the time or whether he reported to her what the garage man had said, and, if he did report to her, whether he reported before the accident or thereafter. Neither her husband nor the garage man testified in the case. In the light of the failure of the evidence to make this point clear, we need not give much concern to what transpired the evening before except to observe that if Mrs. Shott in fact was told by the garage man that he did not think the car "was dangerous at all" or if she was told by her husband that the garage man had so stated, before she started on her trip the next morning, it must be assumed that she relied on that in-

formation and consequently that she did not believe there was danger in using the car. True, the garage man is also said to have requested that the car be brought back the next morning, but that request or instruction was of secondary importance if he also said that the car was not in dangerous condition for use. The car was not returned to the garage the following day, but, instead, Mrs. Shott and Mrs. Lewellyn started to drive to Rolfe, McDowell County, in furtherance of their business as saleswomen for the Bluefield Supply Company. Before leaving Bluefield, where the women both resided, Mrs. Shott drove the car to the Tri-State Filling Station and purchased some gasoline and oil. While there she requested George Kitts, one of the attendants at the station, to examine the steering gear of the car, she saying to him that there was a slight noise or click in the gear. He looked at it, and, according to his testimony, told her that from outward appearance, it was safe. Mrs. Shott says that Kitts "gave it a thorough examination, and said there wasn't any danger in the car, us driving it." Mrs. Lewellyn was sitting by the side of Mrs. Shott and heard and saw what transpired at the filling station, but she says she did not pay attention. Following the accident, which occurred later in the morning, Mrs. Shott said, in substance, to a Mrs. Mathews, who came upon the scene almost immediately, that she (Mrs. Shott) knew there was something wrong with the car and that she ought to have had it fixed before making the trip.

Defendants say that the jury's finding of one dollar for the plaintiff was in fact a finding in favor of the defendants, and that the court erred in setting aside the verdict on plaintiff's motion and awarding a new trial. The plaintiff's position is that the evidence plainly shows the liability of defendants to plaintiff under the theory of her case already stated, and, further, that plaintiff showed that she had made substantial expenditures for medical treatment of her injuries; that she had undergone grievous physical suffering, and that her earning power was impaired. Therefore, she says the verdict of one dollar was in no sense compensatory, and that the trial court properly set it aside.

The defendants both knew that there was a looseness in the steering gear but it does not appear that either of them knew that the looseness was caused by an "out-of-repair" condition that rendered the use of the car dangerous. The responses received by the defendants from their respective inquiries as to the condition of the gear were such as may very properly be considered as leading them to believe there was no danger.

As already indicated, the testimony of Mrs. Shott and George Kitts is variant as to just what was said by the latter at the filling station before the women started on their journey from Bluefield. But if what Kitts said was to the effect that there was probably no danger in the use of the car, the natural effect of such statement was to allay any uneasiness that Mrs. Shott may have entertained and it would, of course, have been no cause for arousing the apprehensions of Mrs. Lewellyn. In that event there was no negligence on the part of Mrs. Shott in proceeding to drive the car on the proposed journey (she having no other or independent knowledge that the steering gear was out of repair to the extent of rendering the use of the car dangerous.) There would be no basis here for plaintiff's suit.

On the other hand, if what was said and done at the filling station the morning of the accident, was such as to put Mrs. Shott on notice that the steering gear was dangerously out of repair Mrs. Lewellyn cannot predicate her suit on that fact because she was present, heard and saw, or at least should have heard and seen, what took place. She says she did not pay attention, but that is no excuse. It was her duty to pay attention, her own safety being involved. If the information there brought forth in the immediate presence of Mrs. Lewellyn was to the effect that the car was dangerously out of repair, such fact was thereby just as effectively brought home to her as though the driver had specifically warned her of its condition. If what was said and done at the filling station was in fact sufficient to notify the two women of the dangerous condition of the car, Mrs. Lewellyn did not exercise ordinary care for her own safety in proceeding with the journey. Where failure to use ordinary care for one's own safety contributes

proximately to his injury, he is guilty of contributory negligence and cannot recover of another for the injury. 45 Corpus Juris, p. 944. This familiar principle of law applies forcefully to guests in vehicles. Such occupant or guest "is obliged to exercise such care as an ordinarily prudent person, riding with another, would exercise for his own safety under the same or similar circumstances." Idem, p. 1016. Multiplication of authority is not necessary.

The owner or operator of an automobile is not a guarantor of the safety of his guest. The exercise of reasonable care is the requirement of the law. *Moorefield* v. *Lewis*, 96 W. Va. 112; *Marple* v. *Haddad*, 103 W. Va. 508. A gratuitous passenger in a private automobile accepts the machine as he finds it subject to the duty of his host to warn him of any known dangerous defect. *Marple* v. *Haddad, supra,* and authorities cited. The necessity of such warning by the host is obviated where the existence of the defect is otherwise made known to the guest in the host's presence. For, inasmuch as the only object of such warning is to convey to the guest information of the car's defective condition so that he may elect in the light of such information whether or not he will ride in the car, it would be a vain thing to require the host to duplicate the information which he knew the guest already possessed.

In the light of the foregoing discussion of this case from the different angles of approach, we are unable to perceive a legal basis to support plaintiff's claim. If she had no knowledge of a dangerous defect in the automobile, by the same token her hostess had none, or at least the latter's suspicions as to a defect had been allayed upon her making inquiry about the same. And again if the hostess knew from what transpired at the filling station that there was a dangerous defect, the guest being then present received the same information. She was put on notice.

If serious consideration must be given to the remark made by Mrs. Shott immediately following the accident, while under the excitement thereof, that she knew the car was out of repair, and that she ought to have had it fixed, it cannot in good reason be said that the knowledge on which that remark was

based can operate here against the defendants and in favor of the plaintiff, because of what transpired at the Tri-State Filling Station that morning. What was said and done there was of such nature either to arouse alarm or to allay anxiety. Whichever it was, the plaintiff got the benefit of it the same as Mrs. Shott.

We are led to the conclusion that there should have been a directed verdict for the defendants as requested by them. However, when the jury returned a verdict for one dollar against the defendants, they manifested their willingness to accept the same and opposed plaintiff's motion to set aside the verdict. If they were willing to accept that result rather than incur the annoyance and expense of further litigation such would seem to have been a reasonable and justifiable position for them to take. Therefore, in our opinion the trial court erred in prejudice of defendants' rights in setting aside the verdict and awarding a new trial.

The judgment of the circuit court will therefore be reversed and judgment rendered here upon the verdict. The plaintiff will recover costs in the trial court; the defendants here.

*Reversed and rendered.*