590 S.E.2d 697

**Kedron SETSER, Plaintiff Below, Appellant,**

v.

**Neil BROWNING, Defendant Below, Appellee.**

No. 31342.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 28, 2003.

Decided Dec. 4, 2003.

Dissenting Opinion of Justice McGraw Dec. 10, 2003.

McGraw, J., dissented and filed opinion.

William S. Thompson, Esq., Cook & Cook, Madison, for Appellant.

George A. Halkias, Esq., Mark L. Garren & Associates, Charleston, for Appellee.

MAYNARD, Justice.

The appellant, Kedron Setser, appeals the September 27, 2002 order of the Circuit Court of Boone County which granted summary judgment to the appellee, Neil Browning. The circuit court found that Setser produced no evidence of negligence or wrongdoing on the part of Browning. We agree and affirm.

## I.

### FACTS

The facts are not in dispute. Browning owns a 1977 Jeep CJ7. During the evening of June 11, 1999, Browning, Setser, and Jamie Toler met at a strip mine in Jasper Workman Hollow, Logan, West Virginia, to go four-wheeling. At the outset, Browning was driving, Setser was sitting in the front passenger seat, and Toler occupied the back seat. During the course of the outing, Toler became uncomfortable and asked Setser to change places with him. Setser obliged and climbed into the back seat. The Jeep contained no seat belts for the rear passengers. As the trio attempted to climb a steep hill, the Jeep stalled, rolled backward, and flipped over throwing Setser from the vehicle. Setser alleges that he suffered permanent injuries as a result of Browning's negligence.

Setser filed a civil action against Browning in circuit court alleging that "[Browning] was operating his vehicle in a negligent, careless and reckless manner in that he failed to maintain control of his vehicle[.]" Setser claimed that he suffered severe and permanent damage as a result of Browning's negligence. He requested past and future

medical expenses, lost wages, loss of tuition, present and future pain and suffering, costs, and attorney fees. Following the taking of depositions, Browning moved for summary judgment on the basis that Setser did not prove any wrongdoing on his part. The circuit court agreed and granted Browning's motion for summary judgment by ordered entered on September 27, 2002. It is from this order that Setser appeals.

## II.

### STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). It is well-settled that:

> "'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syllabus Point 2, *Painter.* Moreover,

> Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syllabus Point 4, *Painter.*

## III.

### DISCUSSION

On appeal, Setser argues that the circuit court erred by granting summary judgment for three reasons: (1) the Jeep had a history of "sputtering out" which a jury could find was a dangerous defect due to the fact that the vehicle was climbing a steep hill at the time of the accident; (2) the Jeep had no rear seat belts; and (3) Browning was drinking prior to the accident. Browning contends the circuit court properly granted sum-

mary judgment because no evidence of any negligence on his part was shown during discovery. Rather, Browning believes it is undisputed that he acted reasonably at all times.

■ Setser's claims against Browning are grounded in negligence. A longstanding premise of the law of this jurisdiction is that "[n]egligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstance of time, place, manner, or person." Syllabus Point 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W.Va. 511, 23 S.E. 582 (1895). More recently this Court stated, " ' "In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 1, *Parsley v. General Motors Acceptance Corp.*, 167 W.Va. 866, 280 S.E.2d 703 (1981).' Syl. Pt. 4, *Jack v. Fritts*, 193 W.Va. 494, 457 S.E.2d 431 (1995)." Syllabus Point 3, *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000). In discussing the definition of "duty," this Court explained that:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

Syllabus Point 3, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988).

■ Setser sets forth his first theory of negligence in the following manner:

> The first material fact that could sway the outcome in the favor of Kedron Setser is the non-disclosure of the mechanical defect that resulted in the jeep sputtering out. . . . The fact that a jeep had a history of "sputtering out" can definitely be considered a dangerous defect by the jury due to the use of the jeep at the time, which was climbing a very steep hill.

Browning contests this assertion. During his deposition, Browning explained that prior to the day of the accident, during the entire time that he owned the Jeep, it had stalled once or twice. He also explained that the standard transmission in the Jeep makes it more susceptible to stalling than a vehicle which is equipped with an automatic transmission. Setser contends that stalling is a dangerous defect which must be disclosed by the operator of the vehicle and which must be presented to a jury to determine if the stalling of the Jeep was a proximate cause of his injuries. We do not believe that stalling once or twice is tantamount to a dangerous defect. If infrequent stalling of a vehicle constitutes a dangerous defect, then every driver whose vehicle has ever stalled has a duty to warn each gratuitous passenger who rides with him or her. We do not believe that is the standard which should be imposed upon motorists.

In *Lewellyn v. Shott*, 109 W.Va. 379, 155 S.E. 115 (1930), the plaintiff, Della Lewellyn, was a guest passenger in a vehicle owned by Edward Shott and operated by his wife. Lewellyn claimed personal injuries resulting from an accident. She alleged that both defendants knew the steering gear in the car "was out of repair, and that it was negligence on their part to permit the car to be used while in that condition, and, more particularly, if Mrs. Shott saw fit to use the car in that condition, it was her duty to warn Mrs. Lewellyn of the danger." *Id.*, 109 W.Va. at 380, 155 S.E. at 115. The evidence showed that Shott noticed a looseness in the steering gear the day before the accident and took the vehicle to a garage for an inspection. The mechanic asked her to bring the car back the next day, but explained that he did not think the automobile was dangerous.

■ The following morning, with Lewellyn present, Shott took the car to a service station to buy gasoline and oil. She asked the attendant to examine the steering gear. After being reassured that the automobile was safe, Shott and Lewellyn continued their journey and subsequently had an accident. Following a trial, the jury returned a verdict of $1 for Lewellyn. The trial court set aside the verdict and awarded a new trial. On appeal, this Court acknowledged that Lewellyn was present when the car was inspected

at the service station and that she heard and saw, or should have seen and heard, what took place. This Court reversed the judgment of the circuit court and held in Syllabus Point 1 that "[a] guest in a private automobile is obliged to exercise such care as an ordinarily prudent person, riding with another, would exercise for his own safety under the same or similar circumstances." The Court went on to hold in Syllabus Point 2 that "[t]he owner or operator of a private automobile is not a guarantor of the safety of his guest. The exercise of reasonable care by the host is the requirement of the law." The duty placed on the owner of an automobile was explained in Syllabus Point 3, in part, as follows: "A gratuitous passenger in a private automobile accepts the automobile as he finds it, subject to the duty of his host to warn him of any known dangerous defect."

 In *Griffith v. Wood*, 150 W.Va. 678, 149 S.E.2d 205 (1966), the plaintiff, Lakie Griffith, was riding with the defendant, Pauline Wood, in her husband's 1955 Ford pickup when the door on the right side came open. Griffith fell or was thrown from the vehicle. She sustained injuries and filed a lawsuit contending, *inter alia*, that the door of the truck was defective. The circuit court directed a verdict in favor of the Woods and the Griffiths appealed. This Court affirmed stating,

> There is no showing that the door was in any wise defective. The statement that the truck was "kinda tricky" and that the door sometimes rattled on former occasions does not establish a defect in the door; and the evidence that the door came open on previous occasions, the times and conditions of which are not disclosed, without more, also does not show that the door was defective or that the defendants knew or had reason to believe that it was defective at the time of the injury.

*Id.,* 150 W.Va. at 684, 149 S.E.2d at 210. The *Griffith* Court reasoned:

> Negligence to be actionable must be the proximate cause of the injury complained of and must be such as might have been

reasonably expected to produce an injury.... The driver of the truck in the case at bar had no reason to expect or foresee that, in making the turn at and upon the intersection, the door would come open while she was engaged in making such turn.

*Id.,* 150 W.Va. at 686, 149 S.E.2d at 211. The Court subsequently held in Syllabus Point 1 of *Griffith* that "[o]rdinarily the mere occurrence of an accident does not give rise to the presumption of negligence."

 The same is true in the case *sub judice.* During his deposition, Setser testified that when he voluntarily got into the Jeep, he knew that he, Browning, and Toler were going four-wheeling. He testified that on the day of the accident, the trio had climbed bigger hills before they climbed the one on which the Jeep stalled, rolled backward, and flipped over. When asked, "Do you think Neil did anything wrong?", Setser answered, "Do I think Neil did anything wrong? No, I don't." We have reviewed the record presented on appeal and find no evidence that the Jeep was defective. The fact that it stalled once or twice before does not establish a dangerous defect. Since it climbed steeper hills on the day of the accident without stalling, we do not believe that Browning had any reason to expect or foresee that the Jeep would fail to successfully maneuver this particular hill. We cannot presume Browning was negligent simply because an accident happened. Instead, we believe that an ordinary man in Browning's position, knowing what he knew or should have known, could not have anticipated that harm of the general nature of that suffered was likely to result.

Next, Setser attempts to establish negligence by stating that "a jury could [ ] render the respondent negligent [by] the fact that the respondent operated the jeep without seat belts in the rear seat." He argues that "West Virginia Code 17C–15–43, which is part of the article referred to in West Virginia Code 17C–15–1,[1] requires vehicles to be equipped with seat belts." W.Va.Code § 17C–15–43 (1964) actually states:

> knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to

---

1. W.Va.Code § 17C–15–1(a) (1951) states:

 (a) It is a misdemeanor for any person to drive or move or for the owner to cause or

No dealer in new or used automobiles shall sell, lease, transfer or trade, at retail, any passenger automobile which is manufactured after January one, one thousand nine hundred sixty-five, unless such vehicle is equipped with safety seat belts for the front seat, which seat belts shall meet the standards set and approved by the Society of Automotive Engineers, Inc.

By its own language, W.Va.Code § 17C–15–43 applies to automobile dealers. Even if the section applied, the Jeep would be in compliance because the front seat was equipped with seat belts.

■ Thus, we hold that W.Va.Code § 17C–15–43 (1964) applies to dealers of new or used automobiles. Pursuant to the statute, no dealer may sell, lease, transfer or trade, at retail, any automobile that is manufactured after January 1, 1965, unless the vehicle is equipped with safety belts in the front seat. Neither a dealer nor an owner of an automobile has a statutory duty to install safety belts in the back seat.

■ Lastly, Setser claims that "[a]dditional evidence of negligence can be found due to the fact that the respondent was drinking prior to the wreck." In reviewing the record, we find no evidence of intoxication which may have proximately caused or contributed to the accident. In Syllabus Point 3 of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), this Court stated:

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the non-moving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explain-

ing why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

If Setser believed Browning was intoxicated and the intoxication proximately caused or contributed to the accident, he had a duty to produce such evidence in the circuit court in response to Browning's motion for summary judgment. He failed to carry his burden of production; now he contends that his case should go to a jury because "as a general proposition, issues of negligence are not susceptible of summary adjudication[.]" *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 390, 135 S.E.2d 236, 242 (1964). Setser overlooks the remainder of the *Hatten* Court's analysis which states "that summary judgment should be granted [ ] when it is clear that there is no genuine issue of fact to be tried and inquiry is not desirable to clarify the application of the law[.]" *Id.*, 148 W.Va. at 390, 135 S.E.2d at 242–43.

After carefully reviewing the record submitted on appeal, we believe the circuit court properly concluded "that there is no genuine issue as to any material fact pertaining to the actions of Neil Browning[.]" The court based its conclusion on the following findings:

a. The non-moving party has not produced any evidence of negligence or wrongdoing on the part of Neil Browning.

b. The non-moving party failed to produce any evidence of any known dangerous defect in the Defendant's vehicle. Therefore, the Defendant owed no duty to the non-moving party.

c. The statutes cited by the non-moving party, § 17C–15–1 and § 17C–15–43, are not applicable here because the incident in question did not occur on a public highway.[2] Further, even if the statutes applied, there is no evidence that the Defendant violated said statutes.

d. The non-moving party failed to produce any evidence that the Defendant was

---

endanger any person, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this article, or which is equipped in any manner in violation of this article, or for any person to do any act forbidden or fail to perform any act required under this article.

2. We should point out that Setser does not assign error to this finding of the circuit court nor does he contend on appeal that the accident occurred on a "highway." This omission notwithstanding, we note that these two statutes, one by its express terms and the other by reference and the inclusion of both in Chapter 17C *Article 15*, only apply to vehicles operated on public "highways." Conversely, they plainly do not apply to vehicles

intoxicated or impaired in any manner while operating his vehicle at the time of the incident referred to in Plaintiff's Complaint.

(Footnote added). We find no error.

For the foregoing reasons, the judgment of the Circuit Court of Boone County is affirmed.

Affirmed.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

McGRAW, J., dissenting.

(Filed Dec. 10, 2003)

I dissent from the majority's decision in this case because I believe the trial judge improperly resolved genuine issues of material fact regarding Appellee's use of alcohol prior to the accident and the jeep's previous history of stalling-out. The parties presented conflicting evidence on these issues. The trial judge should not have taken the liberty of weighing the evidence presented or to otherwise encroach upon the all-important function of the jury as fact-finder.

For the reasons stated, I respectfully dissent.

operated off-road on private property. Having said this, we need not further discuss the propriety of the circuit court's finding because this Court has said that "[i]ssues not raised on appeal or merely mentioned in passing are deemed waived." *Tiernan v. Charleston Area Medical Center*, 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998).